No. 17,677.

J. N. McCullough, et al. *v.* Virgil H. Thompson, et al.
(295 P. [2d] 221)

Decided March 26, 1956.

Mr. JAMES P. MOYERS, Mr. R. T. THOMAS, for plaintiffs in error.

Messrs. MURRAY, BAKER & WENDELKEN, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the Court.

VIRGIL T. THOMPSON and Homer Busby, doing business as Busby-Thompson Realty, and Bernie White, doing business as White Realty Co., licensed realtors in Colorado Springs, Colorado, brought an action against J. N. McCullough, Jr. and Winifred A. McCullough, to recover judgment in the sum of $950.00 together with interest thereon allegedly due them for services rendered in the sale of the McCullough property. The issues having been formed, the cause was tried by the court without the intervention of a jury and judgment entered in plaintiffs' favor in the sum of $950.00 with interest, amounting in all to $1008.68. Defendants are here by writ of error seeking a reversal.

The parties will be referred to as plaintiffs and defendants as they appeared in the trial court.

It appears from the record that on or about December 7, 1953, defendants listed their property with Bernie White for sale at a price of $19,000.00 and agreed to pay a commission of five per cent if a purchaser ready, willing and able to buy the property on the terms prescribed was found within sixty days. On December 16, 1953, plaintiffs found a purchaser allegedly ready, willing and able to purchase the property upon the listed terms, and plaintiffs and defendants thereupon entered into a "Receipt and Terms of Purchase" agreement in which the following appeared:

"Approval by Purchaser

"I (We) hereby agree to purchase the above property and to pay the price of $19,000.00 on the above terms, within a period of 30 days provided the Abstract shows a merchantable title, or can be made such within a reasonable length of time.

George D. Jackle, Purchaser
Dolores B. Jackle, Purchaser."

Beneath the above quoted portion of the "Receipt and Terms of Purchase" agreement the following appears:

"Approval of Seller

"I (We) hereby accept the terms of purchase set out above, contingent upon compliance with the above terms and conditions and do hereby authorize the above named agent to close the sale in accordance with the same, and acknowledge that the same is a binding contract; and I (we) agree to pay forthwith to the above named agent a commission of 5% of the gross sale price for services in this transaction. I (we) further agree that, in the event the deposit becomes a forfeit, the agent shall retain one-half of said payment up to the extent of 5% of the gross sale price.

J. N. McCullough, Jr., Seller
Winifred A. McCullough, Seller."

The undisputed evidence discloses that on or about January 8, 1954, defendant J. N. McCullough, Jr., met with the real estate agents, and, according to his testimony, then notified the agents that he did not want to sell his property unless and until his attorney advised him that under the "Receipt and Terms of Purchase" agreement he was legally obligated so to do. Susequently and on January 13, 1954, the attorneys for the Jackles, purchasers under the agreement, wrote J. N. McCullough, Jr., by registered special delivery letter, with return receipt requested, advising him that the Jackles would be in their office on Friday afternoon, January 15, 1954, at 2 o'clock P.M., to close the transaction and

would have available at that time the entire amount of cash required to pay the purchase price as provided in the agreement. Defendants did not attend. The undisputed testimony is that at the time fixed in the communication above referred to there was in the hands of Jackles' attorneys a certified check sufficient in amount to pay the entire purchase price due the McCulloughs under the terms of the purchase agreement. The contemplated sale was never consummated.

The undisputed evidence is that on January 15, 1954, being within thirty days after December 16, 1953, plaintiffs had produced a purchaser ready, willing and able to purchase the property described in the "Receipt and Terms of Purchase" agreement, and to pay therefor in accordance with the terms and conditions thereof. Under the pertinent statute, C.R.S. '53, 117-2-1, they were entitled to their commission. *Finnerty v. Fritz*, 5 Colo. 174; *Dickey v. Waggoner*, 108 Colo. 197, 114 P. (2d) 1097; *Gray v. Blake*, 128 Colo. 381, 262 P. (2d) 741; 8 Am. Jur., p. 1097, sec. 184; 12 C.J.S., p. 222, sec. 95 (2).

It appears from the record that the purchasers, as late as January 21, 1954, demanded that the owners execute the deed in accordance with the terms of the "Receipt and Terms of Purchase" agreement and that the owners subsequent thereto orally and by letter did agree to transfer title to the property and deliver possession as provided in the Receipt and Terms of Purchase" agreement. That adjustments were thereafter made which constituted a waiver of the terms of the agreement as between the owners and purchasers is immaterial here since it cannot release the owners from their contract with plaintiffs, who fulfilled their obligation when they secured a purchaser who was ready, willing and able to purchase on the terms prescribed by the owners, through whose fault the transaction failed.

The judgment is right and, accordingly, is affirmed.